Or burning with nothing to see a sigh Elizabeth Gusfeh 419-L Good morning, your honors. I'm Elizabeth Gusfeh, Muhammadan hearing on behalf of the plaintiff appellant Trevor Schleicher and I'd like to reserve four minutes for rebuttal. This case is about an employer who paid a female $694,000 less than a male even though they were performing the same work and then the employer reduced the male's rate in Now the district court in this case found that even though there was a prima facie violation that ultimately the pay disparity was based on a factor other than sex allegedly because the female sales employee Susan Piotrowski personally chose the lower pay scheme. Now that conclusion is wrong for several reasons. First of all whether or not there was truly a choice is a disputed fact which is why this case should reach a jury. There is conflicting testimony in the record about whether or not she really had a choice in 2009 but no this would make more sense if you were representing her. Are there other cases where somebody who's making more alleges that there's a violation of the statute and succeeds? This case is unusual because it is a male who has brought this action. No it's unusual because the person who brings it is making more than the where that's been done successfully. No there hasn't been a case that with these specific facts but what this employer did that violated the Equal Pay Act was she reduced the male's rate. Well I understand that that normally can be a violation of the Equal Pay Act but it's only a violation if in fact the original has that he will succeed on a claim of a violation of the Equal Pay Act when he is making $700,000 more than she is. Right we have to prove that there was a violation but not necessarily that he was making less. We have to show that there was a pay scheme in place and that there was a wage disparity. It's not the sex that would be under a Title VII claim where the plaintiff would have that burden but in this case there is evidence that this pay disparity was based on sex and that's because the CEO for three and a half years consciously decided to make out a check to a male and a female performing identical work and she paid the male. I thought the evidence showed that both employees were offered two options as to how to be paid and that the female chose to keep get the hundred thousand dollar salary guaranteed plus ten percent of the profit pool and that the male employee chose to get no guaranteed but twenty percent of the profit pool. Is that not what the evidence shows? That's correct that is the choice that was made in 2009 but when the disparity occurred later this female was not given a choice. She wasn't asked in 2010 would you like to be paid differently when the employer... Where is there any necessity that that everybody gets to choose again? There is that in the employment contract or anywhere else. There is no legal requirement or contractual requirement to do that but if the defendant's argument is that she was given a choice we have to ask ourselves was she really given a choice when the pay disparity existed in 2010, 2011, 2012 or 2013. She's already made her choice, she's made her bed. She has to lie in it. I can we might find a violation but but he's rolling in dough at this point. What's what is his problem? Even though he may have been the beneficiary of more money it doesn't mean that he should be denied his right to earn that compensation and not have his pay reduced in violation of the law. If you have an initial violation where there is a pay disparity... Well that's what we're trying to decide. Is there an initial violation and it appears here that it was based on a choice that they made in 2009 or 2010 whichever whichever that was. If it had been two men that were faced with that choice and one of them went one way and one of them went the other there wouldn't be any question at all. The only reason you're in here is because one of them was male and the other one was female but what difference does that make if the choice was not premised on gender? The initial choice was not premised on gender but ultimately the CEO made a choice to continue to pay a male and a female vastly different wages. Did the female ask for treatment like the male during 2010 or 11 or 12 or 13? No but there's no requirement that the male and female who are performing the same work be paid equally and they weren't and that is very clear in this record that they weren't. But depending on hypothetically how the company did the plaintiff might I mean sorry the the female might have made a good choice and certainly the female was risk-averse when she made the initial choice if she wanted a guarantee of $100,000 she might have thought that the extra 10% of the profit pool that the male was going to make was not likely to be equal or greater than a hundred thousand and then and there's no record evidence is there tell me if I'm wrong that the female ever asked to be paid according to the male's method of being paid right? That's true the female never asked but again there's no obligation under the law that she asked. I understand where your concern is because in certain situations a male may have an entree into negotiations or discussions that a female might not. That's a fair consideration but what we have before us is our record and that's what we have to look to. So when I know there's some question about what Miss Piotrowski said at the beginning but I think that was pretty well explained in the briefing and so what we have here is the testimony that they were offered the very same options and that Miss Piotrowski said no I'm a single mother I cannot afford to run a risk. Your client testified well she wasn't going to touch that with a 10-foot pole and isn't there testimony in the record from her that said yeah I knew he was making more money and I think he made a good choice more power to me. So do we have anything in the record that would indicate that there was an improper disparity based on sex? Yes that's true that that testimony exists but there's also testimony from the female sales employee herself saying that at the time in 2009 when the male employee was hired she testifies that she didn't have the choice at that time and that was. I thought there was an explanation in your opposing counsel's briefing that explained exactly what I believe deposition question that was responsive to and that that was not responsive to the question of whether Miss Piotrowski chose to have a less risky alternative and that her testimony was consistent that she chose and wanted a less risky alternative. That's true but in her deposition testimony if you read it it says that at about the time that she didn't have the choice and that was a moment where the truth slipped out and it's for a jury to decide if that was credible or not credible and whether the defendant's explanation applies or whether she was talking about the 2009 time period where Trevor Schleicher came on board and there is evidence of a sex based discrimination not that the plaintiff has that burden at this point to prove that but there is evidence you have a CEO who quarter after quarter after quarter sees that a male is earning sometimes $80,000 more in one paycheck than a female and she decides the very next quarter to write another check and then another quarter comes along and she writes another check where she pays a male significantly more. That is a conscious sex based decision to pay a male more than a woman who is performing the same exact work and I'd also like to mention that there has been a jury trial last week the verdict did come out but it is the plaintiff's position that the plaintiff Trevor Schleicher should have an opportunity to present his Equal Pay Act claim because they were different claims with different burdens of proof. So there was a jury trial on what topic? It was on the state based claims because in this case the So it was on the procuring cause issue and a Michigan Elliott Larson Civil Rights Act gender discrimination claim. This was in state court? Yes. And what was the outcome? The jury found in favor of the defendant but again this Equal Pay Act claim presents a different issue with different burdens of proof for the plaintiff and the plaintiff should have an opportunity. Is there nothing in Michigan law which is the equivalent of the Equal Pay Act? The Michigan Elliott Larson Civil Rights gender discrimination case mirrors Title 7 which has... We know that. I'm asking you if there is an equivalent of the Equal Pay Act. The closest would be the gender discrimination claim under the Michigan Elliott Larson Civil Rights Act for pay discrimination. And that does not But it does have different burdens of proof and we would not have to prove that there was discrimination directed at the male in this case if it were to reach a trial. And that is why we believe that the plaintiff appellant should have an opportunity to present this claim to a jury. Thank you. Good morning, Your Honors. Dave Sasanti. I'm sorry to interrupt you. Can we talk a little bit about the state equivalence here? I'm now concerned about whether this issue has already been definitively resolved. Well, before the case... We filed a motion for some... We call it summary disposition in state court urging the court to dismiss all the claims including the state Elliott Larson Civil Rights Act claim, which was premised on the change in his compensation. And our first argument was that rest judicata applied because of the decision from Judge Borman in this case. And there is a plethora of case law that says that where you have dispositively decided an EPA claim or a Title VII claim for that matter, and they're based on the same essential wrong, that that EPA claim essentially disposes of the state law claim. And for reasons I can't explain to you, the state law judge did not agree with us on that. So the state law claims in this case were disposed of, I will say, after 22 minutes of deliberation. The jury found in favor of my client on all the claims. But the part of the Elliott Larson case that went on in state court had to do with the unequal... With the disparity in the wage thing that we're talking about here. Exact same set of facts. And what is interesting, what's always been interesting to me about this claim is that on the EPA side, the plaintiff has to show that Sue Piotrowski's wages were intentionally suppressed in order to get to under this part of the statute they're suing under. In the state law claim, they were proving... They were trying to prove that the male was discriminated against. And all the evidence they've presented to your honor is... And it's admittedly extremely weak, but nonetheless, it's designed to show that Marisa Penko, the CEO of Preferred Solutions, has an animus against men. So if she has an animus against men, why would she intentionally suppress Sue Piotrowski's wages? You would expect the opposite would be true. Now, isn't the theory in real life that in the years when the male was making a ton of money, the female had an Equal Pay Act problem, and the male can raise that because when this is realized, the company remedies the Equal Pay Act problem that the female had been suffering by reducing the wages of the male. And so the male suffers for the last year in 2013 when he's being paid less, which is an improper remedy if there was an Equal Pay Act violation. But then his Elliot Larson claim is that when the company decided to pay him less, they were discriminating against him on Elliot Larson grounds. Am I right? Is that essentially what's going on? Well, I think, for example, with everything you said is true, the proofs designed to prove those things are... The normal case, if you will, and to judge Daughtry's earlier question, I am not aware of a single case on this fact pattern. But I would suspect that when Congress enacted the section of the statute that plaintiff is suing under, the normal case would be, and we'll just pick a female, because it's usually the female who's paid less, the female's paying 50 grand a year, the male is being paid 100 grand a year, the female employs the discrepancy, learns of the discrepancy, goes to her employer and says, this is ridiculous, we're doing the exact same job, I'm being paid $50,000 less, and there's evidence the employer is aware of this and has intentionally paid the female less, and in response to that says, yes, you're right. So I'm going to go to the male and I'm going to reduce him from 100 to 50. That's how I'm going to remedy my wrongs. But isn't that what happened here, except for the fact that it's the male who's saying, for the year 2013, when you reduced my pay to equal the lower female pay, I was wronged during that year. He's not complaining about the other years, of course, because he was paid $600,000 as compared to $200,000. Mind you, Judge Moore, no one complained about anything. Neither the plaintiff complained he was making too much, and the female plaintiff, Sue Piotrowski, didn't complain. It's very clear she never complained about any discrepancy. The main issue here is how do we get to this disparity, because there is a disparity. And I think all three of you have acknowledged, in one form or fashion, the reason we get to where we get is because of the way that the pay structure is designed and a choice. There is absolute, undeniable proof that both of them were offered the same exact pay structure, $100,000 with 10% of the profits or zero base, and 20%. What I understand your opponent to be arguing in the oral argument is that the female was not given a choice in years 2010, 2011, 2012 to shift to what the male was making, to shift to the mechanism that the male was utilizing. What is the evidence in the record? Because we're on summary judgment, and you have the burden, right? I will defer to what Judge Daughtry said on this, which is there is no requirement that she go back. Here's the absurdity of the argument that they're making. To remedy the wrong, she would have had to strip Sue Piotrowski of her guaranteed base salary, which is the specific reason. Couldn't the remedy of the employer be to say to the female, each year or whatever the time period is when people can make choices, you know that Joe is making, I'm making up names, you know that Joe is making more than you are under his mechanism, do you want to shift to his mechanism? And then Mary can say, no, I don't want to shift, or Mary can say, yes, I realize now I made a bad judgment. I can say definitively there is no case that suggests that that is required, and I'll point out another reason. But why should it be required under the Equal Pay Act? I'll grant you that probably there are no cases. Because, for example, in the first quarter of 2010, Ms. Piotrowski made more than the plaintiff. So at that point, was she supposed to go to the male plaintiff and say, your female counterpart just made more than you in this quarter, are you sure you want to stick with the deal you made because it might not work out? As you may recall from our briefing, we've argued that there are two affirmative defenses at play here. Based on factors other than sex, but there's also this quantity and quality of production. And we cite this Diamond v. T. Rowe price case, and it shows the reason that we have a disparity and the reason that in one quarter someone makes less and someone makes more is because there is a portion of the compensation scheme that's tied directly to the profitability of this particular portion of the company's business. At the time of the briefing, there was some question, if I'm remembering it correctly, as to whether the plaintiff here would actually lose that much money by switching to a base and a percentage because how much he makes depends on what's in the pipeline to earn. But am I to understand from the other case that in fact he did end up making less than Ms. Piotrowski did? So when the change takes place, they're now on equal footing. So they're making the exact same amount from July 1 of 2013 until he's fired on December 3. And he ended up making just over $31,000 less under the revised compensation scheme than he did under the original one. Would have made. Yes. Now, this is not in the record, but to illustrate the point, had he not been terminated and had he worked all of last year, he would have made more under the compensation scheme that Ms. Piotrowski selected. And that's the fundamental flaw in this case. I think I can say other than this Diamond v. Tiro price case, every EPA case that I am aware of, there is an objective difference between what the male and female are making. And there is no doubt how that's going to play out in the future. One of them is being paid more and one of them is being paid less. And it's typically hourly rate or it's your salary. One of them starts at a higher salary and it goes up. That's how they play out. There is an objective difference. Our argument is not that merely because a male can go in and access an upper level of management and negotiate a better wage than a woman who does the exact same work, that that cleans everything up and there's no EPA violation. I don't want to be evasive, but I want to make sure I understand your question. There are numerous cases where courts have recognized that negotiation that is supported by objective fact. I come from a different geography where we make more money here than here. I have greater experience. I have specific experience. Non-sex based. Exactly. In that type of a setting, we would have a problem potentially if these compensation structures were not offered to both of them. And I say potentially because at that point it's hypothetical. This is what's interesting. The focus of EPA to establish a prima facie case, which we really haven't focused on because I think the affirmative defenses are so strong, the person bringing the claim has to establish a lower wage. And as of the day that the respective compensation schemes are selected, there's only one thing we know for sure. And that is Sue Pietrowski is going to make $100,000. The female has a $100,000 guarantee. That is the only thing we know. So I submit to you who has the lower wage on the day that they select these respective compensation schemes. I would say you could make a very good argument that it was the female that did it. Well, you might be in trouble if you were representing, is her first name Sue? Yes. And if after a year or so she saw that the plaintiff was making a good deal more than she was and went to the CEO and said, I want to, on that plan, I made a bad judgment, and the woman said, no, I'm not going to let you change your mind. I would agree. Is there any evidence at all in the record that the female worker did go to the CEO and ask for treatment like the male worker? The evidence is unequivocal that she never requested a pay change. Now, your opponent said there's no requirement under the EPA that she, the female worker, request a pay change. How do you respond to that? I would say there's no legal requirement that she do that. Because, again, I think where we have to focus on is the nature of the pay structure. Wait a minute. I think maybe the question is, is there some obligation on the CEO, when she sees this disparity, to dump some money on the woman? No. Well, isn't that the question? Unsolicited, dump some money on her. There is no requirement because in this particular pay structure, well, there's two reasons. Let me start with the second one. In this particular pay structure, as we know, in at least one quarter, Ms. Piotrowski made more than the plaintiff. So it's subject to change quarter to quarter. So literally what I suppose plaintiff is asking should have been done in this case is that there should have just been a gratuitous payment that wasn't related to the base salary or the profit slash commission. That would be number one. But number two, there are a multitude of cases where the courts have justified or have found that employers are justified in paying males and females differently. And that never changes over time. The female continues to be outpaced by the male. But you look at the date and time that the decision is made to determine if the initial setting of the salary, the pay structure, the commission percentage, the hourly rate was based on sex or not. And if there is no evidence... Absent a complaint. Absent a complaint. Absent a complaint. You're correct. Yes, Judge Strange. If she had made a complaint in this case, I think we would be squarely under Section 205D14. An employer who is paying a wage differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee. That goes back to my hypothetical, the normal situation. I know I'm being paid less, and I raise it with my employer, and my employer dings the higher paid opposite-sex employee. That's not what we have here in any way, shape, or form. And if I can just make abundantly clear in my last 45 seconds, I think it's extremely disingenuous to suggest that Ms. Piotrowski did not have a choice. The testimony on pages 46 and 47 is very clear that what Ms. Piotrowski was testifying to is that before the plaintiff was hired, she was paid $100,000 plus 20% commission. And after a plaintiff was hired, and at his suggestion, it became not a commission in the sense of you eat what you kill commission, based on your own individual work. It became a profit pool. And at that point, there was no choice to keep $100,000 plus 20%, because I presume everyone would have accepted that pay rate, because that's higher than anything either one of them got. She said, I didn't have a choice to keep my pre-plaintiff pay structure. I had a choice between zero base and 20% profits, or 100,000 base and 10% of the profits. And she selected what ultimately ended up being, at least for all but one quarter, the less lucrative plan, and never complained about it one time. Not one time did she complain. Thank you very much. Thank you very much. I'd like to just begin by saying that there is a requirement that when a male and a female are paid differently, that the employer must correct it. And she must do so by raising the female up and not reducing the wage rate paid to the male. But what if the male and the female have signed up for what they're being paid and are thoroughly happy with it? That's a defense to the fact that the disparity exists. Well, there is testimony on the part of the female sales employee where she said that the fact that Trevor was making so much than her made her ill when she talked about it. So there is some conflicting testimony on that point. But she wasn't willing to give up the guaranteed $100,000. But she wasn't asked if she was willing to in the later years when the pay disparity actually occurred. Well, what's to prevent her from going to the CEO and saying, I've had all of this, I can stand it, it's making me ill, I want to change the wage base here. Well, again, there's no requirement under the law that she do so. And my co-counsel here, or my opposing counsel, was unable to answer that question to say that there was a requirement because there's not. And if this court were to accept this personal choice theory, it would push the statute off the cliff. Because an employer could say, well, I'm going to hire 10 males years later and I'm going to pay them more. But you know what? Female, that's okay. You can't change your compensation structure because you picked it. So that would cause... Where is the evidence in this case that the employer did not allow the female to change her pay structure after 29 or 2010, whatever the year of choice is? Where is that evidence? The evidence is that in the later years, from 2009 or 2010 to 2013, that she continued to write out these checks, paying a male more. Where is there evidence? You had said, and the employer refuses to allow the female to change. She never went back to the female and said, would you like to change? I see that there's a considerable pay disparity. So the employer did not initiate a higher pay for the female, but the employer never denied the female a higher pay. Is that right? But isn't inaction a form of denial? Only if the female doesn't realize that she's getting less and doesn't object to it. I mean, she knew she was getting less. You just told me she said it made her ill. It would make me ill, too, but I might want that guaranteed $100,000. That's the point. Right, but she never was given the opportunity to change her pay structure. The employer never had a conversation. There was no discussion. She simply continued to pay a male significantly more for the same exact work, and that's the purpose of the Equal Pay Act. It's very simple. Equal pay for equal work. And once there is a disparity, the employer must correct it. That's what the Maricopa case tells us, that once an employer is aware of a disparity, they must act within a reasonable time to correct that pay disparity. And that didn't happen in this case. And that is why the lower court should be reversed on this point. It would gut the statute if we allowed a scenario where a man and a woman are doing the same exact work. They even had the same sales experience. They worked at the same company prior to joining Preferred, and yet they did the same work for substantially different amounts of pay. We're not talking about a $1,000 difference. We're talking about $694,000 differences for a male and a female performing the same work. And I would also like to just mention that, Judge Dautry, you expressed some concern about this state court issue. In Fallon, the court says, It is possible that a plaintiff could fail to meet its burden of proving a Title VII violation, and at the same time the employer could fail to carry its burden of proving an affirmative defense under the Equal Pay Act. So it's possible to have a different defense or a different result, and that is why the plaintiff in this case should have an opportunity to take the Equal Pay Act claim to a jury. I see that my time is up. Thank you. Thank you both for your argument. The case will be submitted with the clerk recess court, please.